# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

```
THE ONIONMAN COMPANY, LLC,      )
VIDALIA ORGANICS, INC., and     )
SHAD J. DASHER,                 )
                                )
     Plaintiffs,                )
                                )
     v.                         )     2:21-CV-048
                                )
NATIONWIDE AGRIBUSINESS         )
INSURANCE COMPANY and           )
SOUTH GEORGIA INSURANCE         )
ASSOCIATES, LLC,                )
                                )
     Defendants.                )
```

## ORDER

Before the Court is a motion to remand filed by Plaintiffs Onionman Company, LLC ("Onionman"), Vidalia Organics, Inc. ("Vidalia"), and Shad Dasher. Dkt. No. 12. For the reasons below, the motion is **GRANTED**.

## BACKGROUND

This litigation stems from a car accident in 2017. Dkt. No. 1-1 ¶ 15. The individual plaintiff, Shad Dasher, alleges that he was driving a tractor trailer for his two companies, Onionman and Vidalia (the "Corporate Plaintiffs"), when he was struck by a man named James Lester. Id. ¶ 5, 15. Dasher was severely injured in the accident. Id. ¶ 15.

Plaintiffs sued Lester in Long County Superior Court,

contending that Lester was negligent and caused Dasher's injuries. Id. ¶ 17. The problem is that Lester's own insurance has a $25,000 policy limit. Id. ¶ 16. That is far too little, Plaintiffs contend, to cover Dasher's injuries. Id.

That is where this litigation comes in. Plaintiffs contend that their own insurance company, Defendant Nationwide Agribusiness Insurance Company ("Nationwide"), is on the hook for whatever damages Lester's policy does not cover (commonly known as "uninsured" or "underinsured motorist" coverage, "UM coverage" for short). Id. ¶¶ 16, 18; see, e.g., Allstate Fire & Cas. Ins. Co. v. Rothman, 774 S.E.2d 735, 737 (Ga. Ct. App. 2015)(explaining that UM coverage in Georgia, as relevant here, "provides that the applicable limits of liability are available to cover any damages an insured suffers which exceed the tortfeasor's policy limits") (citing O.C.G.A. § 33-7-11(b)(1)(D)(ii)(I)); see also Frank E. Jenkins and Wallace Miller III, Ga. Automobile Ins. Law § 39B:1 (2021-2022 ed.) (same). Nationwide disagrees. Nationwide points out that its policy with Plaintiffs does not provide any UM coverage for this accident, dkt. no. 15 at 6, but Plaintiffs argue that, by operation of Georgia insurance law, it must, dkt. no. 1-1 ¶¶ 12-13.

Plaintiffs first filed suit against Nationwide in Long County Superior Court in February 2020 (separate from their claim against Lester), seeking a declaratory judgment that their insurance

2

policy with Nationwide did (or must be interpreted to) provide UM coverage for Dasher's injuries. See 2:20-cv-00018, Dkt. No. 12 at 1-2. Nationwide removed the case to federal court under diversity jurisdiction and moved to dismiss. Id. at 2. This Court granted the motion and dismissed the case without prejudice. See generally id.

Plaintiffs tried again by filing another action in Long County Superior Court, this time adding South Georgia Insurance Associates ("SGIA") as a defendant. See Dkt. No. 1-1 ¶ 4. According to the Complaint, SGIA is an "agent or broker with specialized knowledge of farm business needs," and it "secured [the relevant] bundled Nationwide policies" on Plaintiffs' behalf. Id. ¶ 9. In Plaintiffs' telling, Nationwide and SGIA (1) knew that Plaintiffs expected that all farm property would be covered, id. ¶ 10, (2) knew that Plaintiffs would need to travel on public roads between tracts of land, id. ¶ 12, and (3) were bound by Georgia law to provide UM coverage unless they obtained a waiver of that insurance in writing, which they did not, id. ¶ 13-14. Thus, Plaintiffs allege, if it turns out that the Nationwide policy does not include UM coverage, SGIA was negligent in failing to obtain it for Plaintiffs. Id. ¶¶ 29-35.

That tees up Plaintiffs' motion to remand. While Plaintiffs and Nationwide are citizens of different states (Georgia and Iowa, respectively), dkt. no. 1 ¶¶ 2-4, SGIA is a Georgia company, id.

3

¶ 5. Nevertheless, Nationwide removed the case. See generally Id. Plaintiffs have moved to remand, pointing out that there is no "complete diversity" between the parties, meaning the diversity statute is not satisfied and this Court lacks jurisdiction. See generally Dkt. No. 12-1. Nationwide ripostes that SGIA is a sham defendant, here only to defeat diversity jurisdiction, and that this Court should ignore SGIA's citizenship for diversity purposes. Dkt. Nos. 15, 20. Plaintiffs, for their part, maintain that adding SGIA is not an act of fraudulent joinder because their claim against SGIA is a potentially viable alternative if it turns out that Nationwide is not bound to cover whatever remains of Lester's liability from the state court case. Dkt. Nos. 12-1, 17. Nationwide counters that ripeness prevents the claim against SGIA from being viable. Dkt. No. 20 at 1–3.

## LEGAL STANDARD

An action filed in state court may be removed to federal court if there is "diversity of citizenship" among the parties. 28 U.S.C. § 1441(b). Diversity jurisdiction exists where the amount in controversy is more than seventy-five thousand dollars, and (among other possibilities) is between "citizens of different states." Id. § 1332. Thus, "[a] civil action otherwise removable solely on the basis of [diversity] may not be removed if any of the parties in interest . . . is a citizen of the State in which such action is brought." Id. § 1441 (b)(2). In that situation, the

4

case must be remanded to state court. Strawbridge v. Curtiss, 7 U.S. 267, 267 (1806).

But "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." Henderson v. Washington Nat. Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). "In such a case, the plaintiff is said to have 'fraudulently joined' the non-diverse defendant." Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011). To establish fraudulent joinder, the removing party has the "heavy" burden of proving "by clear and convincing evidence" that "either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Id. (alterations accepted) (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)).

Nationwide invokes the first pathway. Thus, "[t]o determine whether the case should be remanded," the Court "must evaluate the factual allegations in the light most favorable to the plaintiff" and "resolve any uncertainties about state substantive law in favor of the plaintiff." Id. at 1333 (quoting Crowe, 113 F.3d at 1538) (footnote omitted). And courts must assess that question "based upon the plaintiff's pleadings at the time of removal, supplemented

5

by any affidavits and deposition transcripts submitted by the parties," under the same standard they would apply to summary judgment. Legg v. Wyeth, 428 F.3d 1317, 1322-23 (11th Cir. 2005) (emphasis omitted) (quoting Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998)); Scimone v. Carnival Corp., 720 F.3d 876, 882 (11th Cir. 2013). The question, then, is whether Plaintiffs' claim "is an arguable one under state law"—because "[i]f there is even a possibility that a state court would find that the complaint states a cause of action" against the non-diverse defendant, then "the federal court must find that the joinder was proper and remand the case to the state court." Stillwell, 663 F.3d at 1333 (quoting Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983)). Where the adequacy of the complaint is concerned, courts must apply the state's pleading standards, not the federal standard for evaluating a motion to dismiss. Id. at 1334. "In other words, 'the plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." Id. at 1333 (alterations accepted) (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)).

## DISCUSSION

Nationwide argues that, because Plaintiffs have not yet obtained a verdict against Lester for more than his $25,000 policy

6

limit, they are not yet damaged by SGIA's alleged failure to procure UM coverage from Nationwide. Dkt. No. 15 at 2, 5; Dkt. No. 20 at 1-3. But that fact does not eliminate the possibility that Plaintiffs have stated a valid cause of action against SGIA—or, at least, Nationwide has not carried its heavy burden to show that it does.

The starting point is Georgia law on harm in negligence claims. It is well-settled in Georgia that "to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation, and damages." Collins v. Athens Orthopedic Clinic, 837 S.E.2d 310, 312 (Ga. 2019) (alterations accepted) (quoting Goldstein, Garber, & Salama, LLC v. J.B., 797 S.E.2d 87 (Ga. 2017)). "In other words, 'before an action for a tort will lie, the plaintiff must show he sustained injury or damage as a result of the negligent act[.]'" Id. (quoting Whitehead v. Cuffie, 364 S.E.2d 87 (Ga. App. 1987)). As Nationwide points out, "a mere showing of negligence on the part of the defendants is insufficient to establish a right to recover." Dkt. No. 15 at 5 (alterations accepted) (quoting Albright v. Powell, 147 S.E.2d 848, 852 (Ga. Ct. App. 1966)).

But that only invites the question: what harm or damages must a plaintiff allege at the pleading stage to state a claim for negligence? Georgia's Civil Practice Act requires only "[a] short and plain statement of the claims showing that the pleader is

7

entitled to relief." O.C.G.A. § 9-11-8(a)(2)(A). In Georgia, a complaint should only be dismissed for failure to state a claim when the plaintiff "would not be entitled to relief under *any* state of provable facts asserted in support" and "could not possibly introduce evidence within the *framework* of the complaint sufficient to warrant a grant of the relief sought[.]" Austin v. Clark, 755 S.E.2d 796, 798-99 (Ga. 2014) (emphasis added) (quoting Anderson v. Flake, 480 S.E.2d 10 (1997)). Here too, "all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor." Id. at 799. Perhaps most importantly, pleadings in Georgia courts are not "subject to the more stringent pleading standards governing federal cases." Collins, 837 S.E.2d at 317. Under Georgia's notice pleading standard, "it is immaterial whether a pleading states 'conclusions' or 'facts' as long as fair notice is given, and the statement of [the] claim is short and plain." Forsh v. Williams, 740 S.E.2d 297, 299 (Ga. Ct. App. 2013).

That is where Nationwide's argument falters. Nationwide's argument reduces to an assertion that Plaintiffs' injuries from any negligent failure to obtain UM coverage are not sufficiently concrete (or, framed differently, that Plaintiffs' claim is not yet ripe). Dkt. No. 15 at 4-5. That argument smacks of Article III's demand that a plaintiff suffer (or allege he will imminently suffer) a definite "injury in fact." See, e.g., TransUnion LLC v.

8

Ramirez, 141 S. Ct. 2190, 2203 (2021). But that is not the standard the Court must apply here. Stillwell, 663 F.3d at 1334 (federal courts must apply the state's pleading standards in deciding whether a claim is viable for purposes of a motion to remand based on fraudulent joinder).

Nationwide does not cite any case in which a Georgia court rejected a negligence claim *at the pleading stage* because cognizable harm, though alleged, had not yet come to pass. The cases Nationwide *does* cite merely confirm that harm is required for a negligence claim to succeed on the merits. See Dkt. 15 at 4-6. Taking each of Nationwide's cases in turn: Albright v. Powell held that a jury could find the defendant was negligent while simultaneously finding that the plaintiff had not established a right to recover damages. 147 S.E.2d at 852 ("in making the contention that a verdict for the plaintiff in some amount was demanded, the [plaintiff/]appellant ignores the fact that a mere showing of negligence on the part of the defendants is insufficient to establish a right to recover"). So too, Peters v. Davis affirmed a trial court's refusal to grant a new trial after the jury found that the plaintiff was not entitled to recover damages for pain and suffering. 449 S.E.2d 624, 626 (Ga. Ct. App. 1994). And Cheeks v. Miller indeed held that "[t]he existence of an actual controversy is fundamental to a decision on the merits," but it did so to vacate a *final* judgment on the merits of a not-yet-ripe

9

declaratory judgment claim—not to dismiss the case at the pleading stage. 425 S.E.2d 278, 278–79 (Ga. 1993) (quoting Bowers v. Board of Regents, 378 S.E.2d 460 (1989)). At the outset, therefore, "in citing limited legal authority," Nationwide "has failed to show that [Plaintiffs'] claims against [SGIA] are not possible under Georgia's notice pleading standard." Elliot Wave Int'l, Inc. v. Sentinel Ins. Co., 2:17-cv-00245, 2018 WL 8951096 (N.D. Ga. May 9, 2018), at *4; see also id. ("In the end, the law places the burden on . . . the removing party[.]")).

Regardless, there are good reasons to think that there is at least a possibility that Plaintiffs' claims would pass muster in Georgia courts. To begin with, Georgia law plainly recognizes claims for negligent failure to obtain insurance. See, e.g., Wright Body Works, Inc. v. Columbus Interstate Ins. Agency, 210 S.E.2d 801 (Ga. 1974). Next, and with Georgia's notice-pleading standard in mind, Nationwide's thoughtful briefing on the intricacies of Plaintiffs' claim against SGIA proves that the Complaint offers fair notice of what is alleged. Indeed, Nationwide, itself, identifies the "state of provable facts" and the "evidence within the framework of the complaint" necessary for Plaintiffs to prevail:

- First, "Lester would need to be found liable for Dasher's injuries;"
- Second, "Dasher would need to receive an award of damages

   exceeding the limits of Lester's policy;" and

- Third, Plaintiffs "would need to establish that Dasher does not have UM coverage under the Nationwide policy."

Dkt. No. 15 at 5. And, finally, the complaint contains allegations of cognizable harm which—if proved—would plainly support a claim for negligence. Plaintiffs allege that Dasher's injuries "far exceeded" Lester's policy limit and that State Farm has already paid its liability limits to Dasher. Dkt. No. 1-1 ¶ 16. If that is true, and if SGIA negligently failed to obtain UM coverage for Plaintiffs, then Plaintiffs are (in theory) injured in the amount that their damages exceed Lester's policy limits.

  True, the alleged injury depends on a verdict that Lester is liable for more than those policy limits, id. ¶¶ 19, 35, but the fact that damages have not yet materialized does not mean a plaintiff has failed to sufficiently allege injury under Georgia law. The Georgia Supreme Court rejected exactly that argument in Collins v. Athens Orthopedic Clinic. See 837 S.E.2d at 316–17.

  In Collins, the plaintiffs alleged that the clinic's negligence allowed a criminal hacker to access and steal patients' medical and confidential personal information (including addresses, social security numbers, and the like). Id. at 311-12. As a result, the plaintiffs said, their personal data was available for sale on the "dark web"—leaving them open to identity theft and other financial harm. Id. Critically, however, many of the named

11

plaintiffs and would-be-class-members "[had] not yet experienced identity theft" or related injuries. Id. at 312. Yet the plaintiffs sought damages "based on costs related to credit monitoring and identity theft protection," as well as "a declaratory judgment to the effect that the Clinic must take certain actions to ensure the security of class members' personal data in the future." Id. The Georgia Court of Appeals rejected those claims, "[c]oncluding that the plaintiffs had not sufficiently pleaded injury" because "the defendant's alleged negligence exposed the Plaintiffs to a risk of harm which may or may not occur." Id. at 313-14 (quoting Collins v. Athens Orthopedic Clinic, 815 S.E.2d 639, 644 (Ga. Ct. App. 2019)). The Georgia Supreme Court reversed. Unlike analogous cases the court of appeals relied on, the Court said, Collins came to the court on the pleadings alone. Id. at 314. While a plaintiff seeking to survive summary judgment or obtain class certification must do more than "merely [ ] allege that identity theft was a possible, or even likely, result" of the defendant's negligence, that allegation was enough to step the low barrier of showing "any state of provable facts" that would entitle the plaintiff to relief "within the framework of the complaint." Id. (quoting Austin, 755 S.E.2d at 798). So in Collins, "the plaintiffs allege[d] that criminals [were] able to assume their identities fraudulently and that the risk of such identity theft is 'imminent and substantial,'" amounting to "a factual allegation about the

12

likelihood that any given class member will have her identity stolen[.]" Id. at 315.

The same principles apply here. Plaintiffs allege that Dasher's injuries are "severe and permanent," that his damages "far exceed[ ] the liability limit . . . of the State Farm policy . . . on Mr. Lester's vehicle . . . thereby triggering the UM/UIM coverage," and that Dasher has sued Lester in Georgia superior court. Dkt. No. 1-1 at ¶¶ 15-17. So "[i]n the event that the Court determines Nationwide did not afford Dasher UM/UIM coverage," then Plaintiffs assert "that both SGIA and Nationwide were . . . negligent in failing to provide or offer" such coverage. Id. ¶ 30. Just like in Collins, therefore, the fact that a legally cognizable harm is not yet concrete does not mean that Plaintiffs' claims are obviously nonviable at the pleading stage. Elliot Wave, 2018 WL 8951096 at *3 ("[T]he Court's role at this juncture is only to consider whether Plaintiff's claims are possible, not to pass judgment on their likelihood of success.") (footnote omitted).

Moreover, the fact that damages against SGIA further depend on a *legal* finding—i.e., that Plaintiffs' policy with Nationwide does not include UM coverage for this accident—does not change the conclusion. For one thing, Nationwide itself maintains that the policy here does not expressly or implicitly contain UM coverage for this accident. Dkt. No. 15 at 3 ("Plaintiffs acknowledge that the policy as issued limits U.M. Coverage to vehicles that are

13

scheduled on the policy and not for 'unscheduled mobile equipment which by definition includes tractors.'") (quoting Dkt. No. 1-1 ¶¶ 11-12). For another, Georgia law (like the Federal Rules) expressly permits plaintiffs to plead claims in the alternative. Compare O.C.G.A. § 9-11-8(e)(2), with Fed. R. Civ. P. 8(d)(2). Again, Plaintiffs' primary claim certainly appears to be that Nationwide is on the hook for UM coverage. But in case they are wrong, the rules allow them to claim that SGIA is liable for the same amount because it negligently failed to procure UM coverage. "The Court," therefore, "cannot say that [Plaintiffs] 'would not be entitled to relief under any state of provable facts asserted in' the Complaint[,] or that [Plaintiffs] 'could not possibly introduce evidence within the framework of the complaint[.]'" Elliot Wave, 2018 WL 8951096, at *3 (quoting Racette v. Bank of Am., N.A., 733 S.E.2d 457, 460 (Ga. Ct. App. 2012)); cf. Collins, 837 S.E.2d at 316 ("These allegations raise more than a mere specter of harm" and therefore "are sufficient to survive a motion to dismiss the plaintiffs' negligence claims.").[1]

---

[1] The Georgia Supreme Court also made clear that, while some plaintiffs alleged they had "spen[t] money attempting to mitigate the consequences of the breach by avoiding actual identity theft," the court's conclusion "[did] not depend" on that fact. 837 S.E.2d at 316 ("Although this may represent all or some measure of the plaintiffs' damages to date, their allegation that the criminal theft of their personal data has left them at an imminent and substantial risk of identity theft is sufficient at this stage of the litigation.").

Finally, even if there were more doubt about whether Georgia law tolerates a speculative injury at the pleading stage, the standard of review still resolves the remand question. See Beasley Forest Prods., Inc. v. N. Clearing, Inc., 515 F. Supp. 3d 1367, 1376 (S.D. Ga. 2021)("'If there is even a possibility that a state court would find that the complaint states a cause of action [against the non-diverse defendant],' the Court must remand the case.")(quoting Coker, 709 F.2d at 1440-41). Fraudulent joinder is a narrow, judicially-created exception to the normal diversity rules; it is always the removing party's burden to clearly and convincingly show it is appropriate. Triggs, 154 F.3d at 1287.

## CONCLUSION

In sum, Plaintiffs' claims here are not so obviously doomed under Georgia law that they are either "frivolous or fraudulent." Beasley Forest Prods., 515 F. Supp. 3d at 1377. Thus, Nationwide has not carried its burden to show fraudulent joinder. Elliot Wave, 2018 WL 8951096, at *4. That means the normal rules of diversity jurisdiction apply, and SGIA's presence defeats diversity jurisdiction in this case. Plaintiffs' motion to remand, dkt. no. 12, is **GRANTED**. The Clerk of Court is **DIRECTED** to **REMAND** the case to the Superior Court of Long County and **CLOSE** the federal action.

**SO ORDERED,** this 21st day of September, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA